SEWALL (JONES v.). See Case No. 7,495.

## Case No. 12,683.

SEWELL et al. v. NINE BALES OF COTTON.

[21 Leg. Int. 244;[1] 5 Phila. 508.]

District Court, D. Pennsylvania. 1864.

### DISTRIBUTION OF SALVAGE.

[1. In all ordinary cases the fixed rule is to give to the owners of the salving vessel one-third of the entire salvage decree.]

[2. The distribution of salvage among officers and seamen in proportion to wages would furnish a just and uniform rule for all ordinary cases. The rule is accordingly applied in this case.]

[This was a libel by Charles Sewell and others against nine bales of cotton, to recover salvage compensation. The case was referred to Thomas Hart, Jr., Esq., as commissioner, to report upon the question of the distribution of the salvage award. The report filed by him was as follows:]

Neither the courts of this country, nor of England, seem to have laid down any binding rules governing distribution in cases of salvage, and indeed from an examination of the authorities on the subject, and a comparison of their tables of distribution, it is difficult to discover much reason therein, or to arrive at any uniform method of computing the shares of all the parties entitled. There appears to be no uncertainty, however, in this country, as far as regards the share to which the owners of the vessel are entitled. In the leading cases of The Blaireau, 2 Cranch [6 U. S.] 240, and particularly The Henry Ewbank [Case No. 6,376], the principle of the owner's interest in salvage was considered at length and forcibly sustained. The cases were ordinary in their circumstances, without any special risk and consequent merit in the vessel. One-third of the salvage was awarded to the owners in both cases. The same measure has been adopted in nearly all the American courts and seems to have become a fixed rule in ordinary cases. See Bond v. The Cora [Id. 1,621]; The Boston [Id. 1,673]; Evans v. The Charles [Id. 4,556]. In but one or two instances, has this amount been exceeded, and

[1] [Reprinted from 21 Leg. Int. 244, by permission.]

then for special reason. The commissioner thinks one-third an ample compensation to the owners in this case and awards them that share.

Concerning the distribution of the remaining two-thirds there is more difficulty. Some of the authorities say that the matter rests in the discretion of the court and that the manner of distribution is to be governed by the peculiar circumstances of each case. Fland. Mar. Law, 429; The Albion, 3 Hagg. Adm. 256. And upon this principle many, particularly the English cases, have made arbitrary apportionments into round sums and assigned them among the officers and crew, without much rule or reason applicable to other instances. The Nicolina, 2 W. Rob. Adm. 175; The Hope, 3 Hagg. Adm. 423; The Deveron, 1 W. Rob. Adm. 180; The Columbine, 2 W. Rob. Adm. 186; The Henry Ewbank [supra].

The foregoing cases were peculiar. Valuable ships and cargoes were rescued, and great risk suffered therein by the salvors, who thereupon became entitled, according to the respective amounts and degrees of service performed by them. They cannot bear strongly upon the present case. No such special circumstances exist herein. * * *

The commissioner does not think that the services of the mate entitle him to any extra share or additional sum, in excess of his ordinary allowance as in The Martha, 3 Hagg. Adm. 436; but is of the opinion that all were equally meritorious, and that a plan of distribution must be sought or laid down, applicable to cases of ordinary or universal merit. Many such are to be found in our own and the English books, but a careful comparison of the modes of apportionment therein, has not enabled the commissioner to discover any certain rule of computation laid down for future direction. Our own cases are much less satisfactory herein than those in England. The courts seem to have contented themselves with a subdivision of the remaining two-thirds into a certain number of shares and allotting them among the officers and crew. Warder v. La Belle Creole [Case No. 17,165]; Concklin v. The Harmony [Id. 3,089]; Taylor v. The Cato [Id. 13,786]; Bond v. The Cora, supra; The Boston, supra; Lewis v. The Elizabeth and Jane [Case No. 8,-321.] But the number of the shares, and the proportions of their allotment, vary in almost every case, and though a comparison thereof may approximate to some uniformity as respects the captain's part, it fails altogether in affording us any guide to calculate the shares of the inferior officers and men. So too, the court say in The Columbia, 3 Hagg. Adm. 430: "We will not vary the simple rule adopted in this country in the case of The Waterloo, 2 Dod. 443. We shall follow that precedent and allot one-fourth to captain, and one-fourth to the officers and men." But an examination of the distribution in The Waterloo, shows that the captain

there, only received one-fourth of one-half, and that the remaining three-eighths was divided among the inferior officers and men. In The Martha, before cited, one-fourth was awarded to the captain. In The Caroline, 2 W. Rob. Adm. 124, he was allowed one-third of the balance after deducting owner's share. In Warder v. La Belle Creole [supra], he obtained a little less, and in The Harmony a little more than one-third. In The Cora, one-fourth was given to him, and in The Boston, one-half. No very satisfactory result is obtained from these cases, though they seem to indicate some fraction between one-third and one-fourth for the captain's share. If such or any other fixed proportion, however, be adopted for the shares of the captain and mates, and the remainder awarded to the men as a class, to be divided among them, it is evident that the share of each man will be altogether dependent, aside from other circumstances, upon the number of the crew aboard the particular vessel, instead of bearing some certain and more equitable relative proportion to the shares of the captain and mates, which would remain the same in all cases. Otherwise the officers of a large ship with many men, would take a very large amount of the whole, while the share of each seaman in the remainder, would almost be consumed by their very number. On the other hand, if the crew consisted of only three or four men, their shares would too closely approximate the officers. The commissioner thinks such a result should not be allowed in either case. In the one the men would be over-rewarded, in the other, very inadequately. The services in each instance of the officers and men would be of nearly the same proportionate value, and their respective shares ought to bear the same relation to each other in both cases. How can we arrive at such a result?

The officers and men of a ship, are valuable in their respective positions and line of duty, and the ordinary services they render at sea, are in their own particular stations. Now their wages represent the value of those services, and the relation of his wages to those of the others, the proportionate worth of each man's efforts in the enterprise. It may be said, salvage is an extraordinary service, not dependent in its distribution upon terms fixed for ordinary employment, but the power to reward peculiar merit in certain cases, will, it is believed, surmount this objection, or at least not interfere with the application of such a rule in most cases. It is submitted then that a proportion derived from the pay and wages of the officers and men would furnish a just and uniform rule for distribution of salvage in this and all ordinary cases. Each man's share will then bear the same fixed proportion to that of the captain or mate in all cases (at the same wages), and not vary in each particular vessel, according to the number of hands on board. This method of distribution is not

without authority, but may be well supported by the expression of the court in several English cases, and by some analogies in our own country. In The Columbia, before cited, the court "allots the remaining one-fourth to the officers and men in proportion to their wages, as specified in the muster roll." In The Earl Grey, 3 Hagg. Adm. 364: "Remainder £400, among the officers and crew in proportion to their respective weekly wages; the master sharing pro rata exclusively of £50 specially allotted for his responsibility." See, also, The Hope, 3 Hagg. Adm. 423; The Britain, 1 W. Rob. Adm. 45; and The Martha, 3 Hagg. Adm. 436. Although in none of the above cases, except The Earl Grey, does the rule appear to have been applied to the captain, nor to the mate in all of them, yet the commissioner thinks its principle even more applicable to them, for the reason before stated, and in the difficulty of fixing their shares in any other manner, is much disposed to adopt and extend it. As in The Earl Grey, an additional sum may be awarded to the captain for his responsibility, if the result of the proportion does not fully reward him. It is not known that the rule above has been adopted or used as a guide in any of our own cases. In the report of the leading case of The Blaireau [supra], there is a table of the wages of the salvor crew, which may have influenced the apportionment, though it is difficult to discover the plan upon which it proceeded.

The distribution of civil and military salvage among the men of public ships and of prize money furnishes strong analogies. In the following cases of civil salvage by king's ships, the money was directed to be distributed among the officers and crew in the same manner as prize proceeds would have been distributable amongst them: The Waterloo, 2 Dod. 443; The Thetis, 3 Hagg. Adm. 65; s. c., 2 Knapp, 409, 410; The Mary Ann, 1 Hagg. Adm. 158. And by the late prize act of 1862 [12 Stat. 600] salvage (inter alia) is directed to be distributed and paid in the same manner as prize money. Now the same act changed the manner of distributing prize money and has adopted the same method of apportioning it (and consequently civil salvage by public ships, and military salvage) as is recommended and reported herein for distribution in the present case. See Act 17th July, 1862 [12 Stat. 606]. "The residue shall be distributed and apportioned among all others, doing duty on board, and borne upon the books, according to their respective rates of pay in the service."

The commissioner therefore reports a scheme of distribution among the officers and men of the bark Fanny of $800 salvage awarded them, based upon the proportions which their respective weekly or monthly wages bear to each other, and directs the same to be paid to them in accordance with a table hereto annexed.

The report of the commissioner was confirmed by the court, and distribution decreed accordingly.